UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER BAKER, | : |
| | : |
| *Plaintiff*, | : |
| | : |
| v. | : No. 3:18cv1759 (MPS) |
| | : |
| ANDREW SAUL, | : |
| COMMISSIONER OF SOCIAL | : |
| SECURITY, [1] | : |
| | : |
| *Defendant*. | : |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

In this appeal from the Social Security Commissioner's denial of supplemental security income and disability insurance benefits, Plaintiff Christopher Baker argues that the Administrative Law Judge ("ALJ") violated the treating physician rule; failed to properly formulate his residual functional capacity; and erred by not including all of his functional limitations in the hypothetical posed to the vocational expert. I agree with Mr. Baker's first argument and grant his motion to remand (ECF #16) the case to the Commissioner.

I assume the parties' familiarity with Mr. Baker's medical history (summarized in a stipulation of facts filed by the parties, ECF ##16-1 and 26-2, which I adopt and incorporate herein by reference), the ALJ's opinion, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

---

[1] The plaintiff commenced this action against Nancy A. Berryhill, as Acting Commissioner of Social Security. Since the filing of the case, Andrew Saul has been appointed the Commissioner of Social Security, and he is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).

## I. Standard of Review

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

## II. Discussion

Mr. Baker argues that the ALJ violated the treating physician rule[2] in evaluating the opinions of his treating physicians, *i.e.*, Dr. Baker, his primary care physician, and Drs. Kaplove and Fattahi, his neurologists.

"Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128. "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must

---

[2]The current version of the SSA's regulations eliminates the treating physician rule, but those regulations apply to cases filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Because Mr. Baker filed his claim before March 27, 2017, the treating physician rule applies. *See Claudio v. Berryhill*, No. 3:17CV1228(MPS), 2018 WL 3455409, at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. "In doing so, [the ALJ] must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (*quoting Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). "A failure to 'explicitly consider' these factors is a procedural error warranting remand unless a 'searching review of the record assures the reviewing court that the substance of the treating physician rule is not traversed[,]'" *i.e.*, "a reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (quoting *Estrella*, 925 F.3d at 95-96). In other words, remand is warranted unless "the record otherwise provides 'good reasons' for assigning 'little weight'" to a treating physician's opinions. *Estrella*, 925 F.3d at 96. "The requirement of providing good reasons for the weight assigned to a treating physician's opinion is important because it 'let[s] claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable.'" *Parker v. Comm'r of Soc. Sec. Admin.*, No. 18CIV3814, 2019 WL 4386050, at *4 (S.D.N.Y. Sept. 13, 2019) (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

**Dr. Edwards**

Mr. Baker argues that the ALJ did not discuss Dr. Edwards' opinions that Mr. Baker's migraines are "severe/incapacitating" and that Mr. Baker is not able to work because of his back pain and migraines. He also asserts that the ALJ mischaracterized Dr. Edwards' opinion. (ECF 16-2 at 5.)

Dr. Edwards completed a Residual Functional Capacity Form stating that Mr. Baker has a seizure disorder, chronic migraines, and chronic low back pain. (R. at 560.) Dr. Edwards indicated

3

that Mr. Baker "is on chronic medications – seizure disorder still not entirely controlled. Last seizure 1 month ago." According to Dr. Edwards, Mr. Baker suffers from "mid-low back pain despite physical therapy." (R. at 561.) Dr. Edwards opined that Mr. Baker can sit and stand but due to his back pain, must change position every 15-30 minutes. (R. at 561.) In addition, he cannot lift and carry more than 10 pounds, and is limited in his ability to bend, push/pull, twist, crawl, bend, squat, and kneel. (R. at 562-63.) Dr. Baker further opined that Mr. Baker has "frequent migraines" that are "severe/incapacitating." (R. at 561, 563.) He stated that Mr. Baker is unable to work "because of his back pain and migraines." (R. at 564.)

The ALJ did not accord controlling weight to Dr. Edwards' opinion nor did he "explicitly consider" all the required *Burgess* factors in explaining the weight accorded. For example, he did not discuss the frequency, length, or extent of treatment. More importantly, the ALJ did not even mention Dr. Edwards' opinion about Mr. Baker's migraines. This is notable because the ALJ accorded "great weight" to Dr. Edwards' other opinions stating that they were "consistent with the substantial evidence," and offering no criticism or disagreement with Dr. Edwards. (R. at 16.) Especially because the ALJ assigned "great weight" to those of Dr. Edwards' opinions that he did address, and even used those opinions as a basis to reject Dr. Fattahi's opinion (R. at 17), his failure to mention an opinion by Dr. Edwards that undermined his own conclusion that the migraine headaches were "generally controlled" (R. at 15) suggests that he may have simply overlooked it. Given the ALJ's complete failure to address Dr. Edwards' opinion as to the severity of Mr. Baker's migraines, the Court cannot conclude that the ALJ provided "good reasons" for his weight assignment. *Estrella*, 925 F.3d at 95. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.")

The ALJ's failure is not harmless error because the record arguably contains substantial evidence to support the view that Mr. Baker's migraines, although improved with medication, are "severe/incapacitating."  *See, e.g.*, R. at 503 (11/6/15 Waterbury Neurology note that Mr. Baker has 2-3 migraines a month, which he describes "as a throbbing sensation behind his eyes or to the top and back of his head with associated nausea and light/sound/movement sensitivities," and that each migraine lasts 2-3 days); R. at 656 (12/17/15 Waterbury Neurology note that although Mr. Baker's migraines have decreased in severity and duration with medication, he still has a migraine every 7-10 days that lasts a day and a half); R. at 645 (9/21/16 Waterbury Neurology note that the "pain [and] frequency of migraine[s] ha[ve] improved slightly on Topamax," but "the severity has not changed much" and he continues to have 4-5 migraines a month); R. at 643-44 ("mildly abnormal" EEG result "due to dysrhythmic background and sharp activity posteriorly indicative of a mild degree of cerebral irritability."  Such tracing "are often seen in patients with migraines."); R. at 577-78 (Dr. Kaplove's report stating that Mr. Baker has migraines 3 times a week and that Mr. Baker's description of pain from his migraines as a 5 out of 10 on a 10 point scale **is** "very creditable"); R. at 59-60 (Mr. Baker's testimony that he has 5-6 "intense" migraines a month that are so painful that he "want[s] to go under the blankets and just cry sometimes").  As such, I am not able to say with reasonable certainty that the ALJ would have arrived at the same conclusion upon remand had he addressed, and correctly applied the treating physician rule to, Dr. Edwards' opinion regarding migraine headaches.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding violation of treating physician rule harmless where there was "no reasonable likelihood" that full compliance with the rule would have changed the ALJ's disability determination).  Remand is therefore required.

The ALJ also did not address Dr. Edwards' opinion that Mr. Baker was unable to work due to back pain.  Here, however, the record otherwise provides good reasons for assigning little weight

5

to the doctor's opinion. At step 2, the ALJ, after walking through the medical evidence, determined that Mr. Baker's back pain was a non-severe impairment, a finding that Mr. Baker does not challenge. (R. at 13.) Furthermore, the RFC incorporates the functional limitations ascribed by Dr. Edwards as a result of Mr. Baker's back pain. On this record, the absence of discussion by the ALJ of Dr. Edwards' opinion as to Mr. Baker's back pain is not grounds for remand. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (remand is unnecessary where "application of the correct legal standard could lead to only one conclusion").

Mr. Baker next argues that the ALJ mischaracterized Dr. Edwards' opinion about Mr. Baker's ability to work.

In response to a question on the Residual Functional Capacity Form as to whether there is "other work" Mr. Baker can do given his skills and disability/impairment, Dr. Edwards responded "Possibly – But would need to be 'Light Duty.'" (R. at 564.) The ALJ stated in his decision that "Dr. Edwards opined that the claimant could not return to his previous occupation (as a driver), but that he could perform light duty work." (R. at 16.)

Mr. Baker argues that this is a mischaracterization of Dr. Edwards' statement that warrants remand. I disagree. The ALJ did not find that Mr. Baker retained the residual functional capacity to perform light duty. He credited Dr. Edwards' opinion as to Mr. Baker's functional limitations in the ability to lift, sit, and stand, which were consistent with sedentary work. The ALJ's omission of the word "possibly" in his recitation of Dr. Edwards' opinion was not material and does not rise to reversible error.

**Dr. Kaplove**

Mr. Baker next argues that the ALJ failed to address Dr. Kaplove's opinion that Mr. Baker is not able to work because of "the risk of a breakthrough seizure" and failed to give good reasons for rejecting Dr. Kaplove's opinion that Mr. Baker's seizures "are not currently well-controlled."

(ECF 16-2 at 6.)

Dr. Kaplove, a neurologist with Waterbury Neurology, completed a Residual Functional Capacity Form. (R. at 574-79.) He opined that Mr. Baker "rarely" can reach above his shoulders and down towards the floor, carefully handle objects, and handle with fingers and "frequently" can reach down to waist level. (R. at 576.) Mr. Baker can stand for up to 4 hours, sit for 6 to 8 hours, and regularly lift and carry no more than 5 pounds. (R. at 575-76.) Dr. Kaplove stated that Mr. Baker experiences "periods of dizziness" which might "represent simple partial seizures[s]" during which he needs to sit or lay down. (R. at 576.) Dr. Kaplove indicated that Mr. Baker's prognosis is "overall good, currently guarded as needs better seizure control." (R. at 575.) Dr. Kaplove opined that Mr. Baker's seizures are "not currently well controlled" and that he "[c]annot currently work due to risk for breakthrough seizure." (R. at 578.) Dr. Kaplove stated that Mr. Baker's disability is "temporary" - from January 1, 2017 to a time to be determined based on Mr. Baker's response to treatment but "at least 12 months." (R. at 578.) In response to a question asking when Mr. Baker can return to work, Dr. Kaplove responded "Unknown, will depend on response of seizure frequency to treatment." (R. at 578.)

The ALJ stated that Dr. Kaplove's opinion is "partially supported by the substantial evidence" and "accord[ed] it some weight." (R. at 17.) As grounds, the ALJ explained that (1) Mr. Baker's treatment records show that his seizure disorder is "generally well-controlled, despite a recent increase in seizure activity;" (2) Dr. Kaplove's opined limitations regarding Mr. Baker's manipulative abilities are unsupported; (3) the opined limitations regarding Mr. Baker's abilities to lift, carry, sit and stand are generally supported by the record; and (4) Dr. Kaplove did not consider Mr. Baker's subjective reports of increased back pain with prolonged static positions. (R. at 17.)

Here again the ALJ failed to explicitly apply all the required *Burgess* factors. Nevertheless, the record does disclose good reasons why the ALJ assigned little weight to Dr. Kaplove's opinion.

7

As the ALJ noted in discussing Dr. Kaplove's opinion (R. at 17), he had found elsewhere in his ruling that Mr. Baker's seizures are well controlled (R. at 15) – a conclusion that is opposed to Dr. Kaplove's opinion and one that is strongly supported by the record. During the almost 35 months from August 2, 2014, Mr. Baker's alleged onset date, through June 29, 2017, the date of the administrative hearing, Mr. Baker had 5 seizures - August 2, 2014, June 2, 2016, October 25, 2016, December 17, 2016, and March 17, 2017. After the August 2014 seizure, record evidence showed that Mr. Baker did not experience another seizure until more than a year and half later – in June 2016. (R. at 645.) Mr. Baker had a seizure in October 2016 and in December 2016, but he did not experience another until March 2017. (R. at 508, 634, 621.) As the ALJ pointed out, at the time of the hearing on June 29, 2017, there was no evidence that Mr. Baker had had any further seizures. (R. at 15.) The ALJ's finding is supported by substantial evidence.

As to Dr. Kaplove's further opinion that Mr. Baker is unable to work, such opinions are not entitled to any deference because a finding as to whether a claimant is disabled and cannot work is "reserved to the Commissioner." *Snell*, 177 F.3d at 133.

Therefore, although the ALJ did not explicitly apply all of the *Burgess* factors, I would not remand on this basis because "the record otherwise provides good reasons" for the ALJ's assignment of partial weight to Dr. Kaplove's opinions. *Estrella*, 925 F.3d at 96.

**Dr. Fattahi**[3]

Mr. Baker argues that the ALJ did not acknowledge that Dr. Fattahi is a specialist and the reasons the ALJ gave for discounting Dr. Fattahi's opinion – that Dr. Fattahi did not document objective clinical findings in her report and that she had only been treating Mr. Baker for a year – are not "good reasons." (ECF 16-2 at 7-8.)

---

[3]Although the plaintiff refers to the physician as Dr. Fatthi, the correct spelling appears to be Dr. Fattahi. (R. at 582.)

Dr. Fattahi, a neurologist with Waterbury Neurology, completed a "Seizures Residual Functional Capacity Questionnaire" dated February 8, 2017.  (R. at 580.)  She indicated that Tegretol XR afforded "modest control – 3 breakthrough events in last year." (R. at 581.)  According to Dr. Fattahi, Mr. Baker is limited to low stress work and requires 1–2 unscheduled breaks during an 8 hour workday.  (R. at 582.)  He cannot climb, drive, lift more than 5 lbs, and "should avoid triggers for seizure and migraines including but not limited to stress, missed meals, poor sleep, dehydration, temperature extreme and fumes." (R. at 582.)  In addition, Dr. Fattahi stated that Mr. Baker is likely to be absent more than four days a month as a result of his seizures.  (R. at 582.)  Dr. Fattahi opined that the limitations were effective as of November 6, 2015, when Mr. Baker first began treating with the Waterbury Neurology Group.  (R. at 582.)

> The ALJ accorded little weight to the opinion, explaining:
>
> [a]s support for the opinion, Dr. Fattahi cited the claimant's seizure disorder. It [is] noted that the claimant experiences less than 1 seizure per month.  Furthermore, it [is] noted that the claimant's seizures generally occurred in the evening.  Overall, Dr. Fattahi did not provide objective findings sufficient to support the level of limitation alleged.  Notably, Dr. Kaplove and Dr. Edwards have a longer treating history with the claimant and provided objective clinical evidence to support the limitations opined.  Contrastingly, Dr. Fattahi has treated the claimant for approximately one year and did not document objective clinical findings within her report.  Furthermore, the evidence of record does not indicate that the claimant is as limited as opined by Dr. Fattahi.  For example, the claimant's self-reported activities of daily living support a greater level of functionality. . . . Overall, this opinion is not well supported by the totality of the evidence and is accorded little weight.

(R. at 17.)

Although the ALJ did not identify Dr. Fattahi as a neurologist, the ALJ nonetheless gave good reasons for assigning her opinion "little weight."  The ALJ considered the amount of medical evidence supporting Dr. Fattahi's opinion and the consistency of Dr. Fattahi's opinion with the rest of the evidence on the record and reasonably determined that Dr. Fattahi's opinion that Mr. Baker is likely to miss more than four days of work every month is not supported by record evidence.

9

Although Mr. Baker argues generally that his treatment records "provide support for [the] opinion as they show chronic manifestations of [his] signs and symptoms of his impairments," he does not point to support in the record for the limitation. (R. at 16-2 at 7.) Mr. Baker further argues that the ALJ should not have discounted the opinion based on the length of Dr. Fattahi's treating relationship with Mr. Baker because she "had access to the plaintiff's medical record." (RCF 16-2 at 7.) The length of a treating relationship is a proper consideration. *See* 20 C.F.R. § 404.1527(c)(2)(i). The ALJ's explanation also makes clear that he discounted Dr. Fattahi's opinion because it lacked "objective clinical evidence" to support the limitations she opined. Neither Mr. Baker's treatment records from Waterbury Neurology nor his other medical records reflect the degree of functional limitation ascribed by Dr. Fattahi. Accordingly, while the ALJ did not specifically consider all the *Burgess* factors when assigning Dr. Fattahi's opinion little weight, the error is harmless because the ALJ provided sufficient "good reasons."

Mr. Baker contends that the ALJ was obligated to "recontact Dr. Fattahi if he believed her report was missing necessary information." (ECF 16-2 at 7.) But the ALJ had before him the entirety of Mr. Baker's treatment records. The ALJ determined that Dr. Fattahi's opinion lacked support in the record and was inconsistent with the other substantial evidence in the record. There is no obvious gap in the record necessitating re-contacting Dr. Fattahi. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)(internal quotation marks and citation omitted). "The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician." *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012).

Because I conclude that the ALJ did not follow the treating physician rule and that the error with respect to Dr. Edwards' opinion regarding migraine headaches was not harmless, the case is remanded to the Commissioner for further administrative proceedings consistent with this ruling. I do not reach Mr. Baker's other arguments "because upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Delgado v. Berryhill*, No. 3:17CV54(JCH), 2018 WL 1316198, at *15 (D. Conn. Mar. 14, 2018).

## III. Conclusion

For these reasons, the plaintiff's motion to reverse and/or remand the Commissioner's decision (ECF #16) is granted and the defendant's motion to affirm the decision of the Commissioner (ECF #26) is denied. The case is remanded to the Commissioner for further proceedings.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           February 12, 2020